## Asbel's Substituted Nomination

*Darlington Hoopes*, for petitioner; *Lewis S. Kunkel*, contra.

HARGEST. P. J., October 19, 1932.—Objections were filed to this substituted nomination on the ground that it was not made by the body which was authorized, under the rules of the Socialist Party, to make such a nomination for the thirty-fifth senatorial district. The nominee, however, raises the question that the objections have not been filed in time.

Section 12 of the Act of June 10, 1893, P. L. 419, 25 PS § 984, provides that: "All substituted nomination certificates or papers may be objected to as provided in section six of this act, and if a substituted certificate or paper be filed

after the last day for filing the original certificate or paper, objections must be made within four days after the filing."

The paper purporting to substitute Nathan Asbel as a candidate instead of Henry Dyson was filed August 26, 1932, long before the last day for filing the original certificates, and therefore section 12, requiring objections to be made within 4 days after filing, does not apply, nor does section 6 of the Act of June 10, 1893, P. L. 419, as amended (25 PS § 976), apply, because that provides that objections shall be made to original nomination papers "at least fifty days before the day of election", whereas section 1 of the Act of May 20, 1921, P. L. 958, 25 PS § 1242, provides for the filing of substituted certificates of nomination and nomination papers to fill vacancies at least 35 days before election.

It is clear that we cannot apply a statutory requirement to file objections 50 days before the election when the certificates of nomination or nomination papers themselves may be filed up to 35 days before the election. Strange as it may seem, there appears to be no statutory limit upon the right to file objections to substituted nominations where those nominations have been filed prior to the last day for filing the original certificate or paper. Election machinery is entirely a creature of statute. If the legislature has not put a limit upon the filing of objections the court cannot interject such limit into the law, and therefore we must overrule the proposition that these objections were not filed in time.

Coming, however, to the merits of the case, we find that under the constitution of the Socialist Party the executive committee is the governing authority. The membership of the party in each county is organized into a "local", comprising the entire membership of the county, and "branches" in all political divisions of the county. There may also be "branches" which are not organized into a "local". "Branches" have jurisdiction in the districts in which they are formed, subject to the "local" or to the state committee.

Section 12 of article XIII of the constitution of the Socialist Party provides:

"In case of the death or withdrawal, either before or after the primary, of a candidate for any other office nominated by or selected to receive the support of the locals or branches having jurisdiction over the district from which such officers are elected, or in case of special elections to fill such offices, the said locals or branches shall have power to fill the vacancy, nominate, or select the candidate, as the case may be."

Henry Dyson was nominated at the spring primary as a candidate for the office of State senator of the thirty-fifth senatorial district, comprising Cambria County. He withdrew on August 26, 1932, and Charles Weeks, chairman, Florence Baldwin, secretary, Raymond Packer and George Lightcap, all of Nanty Glo, Pa., undertook to make a substitute nomination "by the Socialist branch of Nanty Glo, Pa."

It appears, and we now find, that there are other branches of the Socialist Party in Cambria County who had no notice of nor opportunity to participate in the making of this substitute nomination. It further appears from the minutes of the executive committee, offered in evidence, that complaint was made to the executive committee that Nathan Asbel, the present substituted nominee, had been guilty of conduct inconsistent with his membership in the Socialist Party. The executive committee undertook to have the said Asbel tried by his own branch with a view to having him expelled from the party. His own branch refused to take any action in the matter, whereupon that branch was suspended by the executive committee. There is nothing in the rules of the party defining suspension, but the testimony of the executive secretary is that such suspension has heretofore been resorted to and results in suspension of all the individuals who are members of the branch until they are individually reinstated as mem-

654

bers of the party. In the absence of any definition as to the effect of suspension under the rules of the Socialist Party, we do not predicate our judgment upon that suspension.

It, however, clearly appears that under the rules of the party the branches in the senatorial district had a right to make this substituted nomination, but no opportunity for a conference or for any joint action was given to the other branches of the party in Cambria County. It follows that the one branch had no authority to make such substituted nomination and that the objections to the nomination must be sustained.

And now, October 19, 1932, the objections to the substituted nomination of Nathan Asbel as a candidate for the office of State senator of the thirty-fifth senatorial district are hereby sustained, and the Secretary of the Commonwealth is hereby directed not to place said nomination upon the ballot. The prothonotary is hereby directed to certify this judgment to the Secretary of the Commonwealth.

From Homer L. Kreider, Harrisburg, Pa.